Brian S. Kabateck, State Bar No. 152054
bsk@kbklawyers.com
Shant A. Karnikian, State Bar No. 285048
sk@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 S. Figueroa Street
Los Angeles, CA 90017
Phone: (213) 217-5000

John J. Reagan (*pro hac vice* pending)
reagan@knrlegal.com
Alberto R. Nestico (*pro hac vice* pending)
nestico@knrlegal.com
**KISLING NESTICO & REDICK, LLC**
3412 W. Market Street
Akron, OH 44333
Phone: (330) 729-1090

*Counsel for Plaintiffs and all others similarly situated*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO ROCHA, an individual; and ESTER ROCHA, an individual, on behalf of themselves and all others similarly situated, | **Case No.** |
|           Plaintiffs. | |
|    vs. | |
| | **CLASS ACTION COMPLAINT** |
| AMCO INSURANCE COMPANY, a California entity; NATIONWIDE INSURANCE COMPANY OF AMERICA, a California entity; ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, a California entity; VICTORIA FIRE AND CASUALTY COMPANY, a California entity; CRESTBROOK INSURANCE COMPANY, a California entity; DEPOSITORS INSURANCE COMPANY, a California entity; NATIONWIDE MUTUAL INSURANCE COMPANY, a California entity; and TITAN INDEMNITY COMPANY, a California entity, | **DEMAND FOR JURY TRIAL** |
|           Defendants. | |

1

CLASS ACTION COMPLAINT

1    Plaintiffs, Francisco Rocha and Ester Rocha (hereinafter referred to as
2  "Plaintiffs") by and through counsel, who hereby bring this action on their own
3  behalf and on behalf of the class of individuals defined below, allege the following
4  based on their own personal knowledge pertaining to themselves and on
5  information and belief as to other allegations, as for the their Complaint against
6  Defendants, Amco Insurance Company, Nationwide Insurance Company of
7  America, Allied Property and Casualty Insurance Company, Victoria Fire and
8  Casualty Company, Crestbrook Insurance Company, Depositors Insurance
9  Company, Nationwide Mutual Insurance Company and Titan Indemnity Company,
10  (hereinafter "Defendants", "Nationwide Corp. Group," and/or "Control Group").

## NATURE OF THE ACTION

11
12    1.    Plaintiffs bring this suit on behalf of themselves and the following
13  Class of persons:
14
15  > All of the Defendants' current and former policyholders qualified under
   > California Law to purchase a Good Driver Discount ("GDD") policy who,
16  > from January 1, 2009 through 2017 ("Class Period"), paid premiums for
   > Defendants' automobile policies containing a GDD (as defined in Cal. Ins.
17  > Code § 660), in excess of the lowest rate GDD policy available for that
   > coverage from another insurance company within Defendants' California-
18  > Licensed Common Ownership, Management or Control ("Control Group").
19
20  Excluded from the Class are:
21      (1)    All present and former directors, officers, and management
22             employees of Defendants;
23      (2)    Any current or former policyholders who filed a lawsuit
               involving any of the claims asserted herein;
24      (3)    Employees of Plaintiffs' Class Counsel in the case and their
25             immediate families, any judge assigned to this case and their
               staff, Defendants' Counsel of record, and their immediate
26             families; and,
27      (4)    All persons who make a timely and proper election to be
28             excluded from the Class.

2.    From January 1, 2009 through the present ("Class Period"), Plaintiffs paid premiums for Defendant's automobile liability policies (defined in Cal. Ins. Code § 660), but did not receive the lowest Good Driver rate available for that coverage from the Defendant insurer that had the lowest Good Driver rate.

3.    California Law requires that insurance companies that write automobile coverage for liability, physical damage collision "or any combination thereof" for defined private passenger vehicles sell GDD policies to the statutory qualified drivers, (Cal. Ins. Code §§ 1861.02 and 1861.025).

4.    The statutorily qualified Good Drivers are entitled to be offered by insurance company agents or representatives and are entitled to purchase the policy with the lowest Good Driver rate for that coverage from any company within the group of insurers having common ownership or operating in California under common management or control, (aka "Control Group")

5.    Defendants are of a common ownership, management or control "Control Group", known as Nationwide Corp. Group.

6.    Defendants, acting together in concert and holding themselves out to be a single entity, through their agents and representatives, all of whom Defendants control, have unlawfully failed to offer and Defendants have failed to sell, GDD policies for their Private Passenger Automobile Insurance policies ("PPA") to Plaintiffs and their other qualified California Good Drivers in the Class, from the Defendant insurer with the lowest Good Driver rates for that coverage.

7.    Cal. Ins. Code § 1861.02(b)(1) requires "every person who meets the criteria of    § 1861.025 shall be qualified to purchase a GDD policy." Cal. Ins. Code §1861.02(b)(2) indicates "the rate charged for a Good Driver Discount policy shall comply with subdivision (a) and shall be at least 20% below the rate the insured would otherwise have been charged for the same coverage."

3

CLASS ACTION COMPLAINT

8.   Plaintiffs and the Class all held insurance policies issued by one or more of the Defendants.  Plaintiffs, along with all members of the putative class, qualify as "Good Drivers" as defined in Cal. Ins. Code §§ 1861.02 and 1861.025.

9.   Plaintiffs do not challenge the premium rates approved by the California Department of Insurance for use by any of the Defendants.  Rather, the subject of this lawsuit is the unlawful, unfair and fraudulent business operations, marketing, management and sales practices of the Defendants as members of the same Control Group.

10.   Plaintiffs further allege that Defendants did not comply with California Law by failing to offer, through their agents and representatives, all of whom Defendants control, nor did the Defendant insurers sell, the lowest Good Driver rate PPA that was available from the Defendants in their Control Group, to the Plaintiffs and the Class they propose to represent.

11.   Had the Defendant insurers' agents and representatives, all of whom are controlled by Defendants for all issues associated with this Complaint, offered the lowest Good Driver rate PPA that was available from other companies in its Control Group, and had the Defendants sold the lowest Good Driver PPA to the Plaintiffs and the members of the Class, they would have accepted the lower Good Driver rate policies from the other Defendants' insurers.  Plaintiffs and the Class were therefore overcharged by paying premiums which were in excess of the lowest available premium offered by any of the Defendant insurers within the Control Group.

12.   Throughout the Class Period, Defendants have unlawfully overcharged Plaintiffs and the Class members for, and wrongfully retained, automobile insurance premiums in violation of Defendants' fiduciary duties, policy contractual obligations and marketing representations, in violation of Cal. Bus. Prof. Code § 17200 and in violation of other applicable California Law (Cal. Ins. Code § 660, §1861.02, §1861.025, §1861.15 and §1861.16).

13.     Plaintiffs and all members of the Class held insurance policies issued by one or more of Defendants' Control Group companies and paid premium overcharges as a result of Defendants' unlawful acts and misrepresentations.

14.     Defendants are commonly owned or operated under common management, and belong to the Control Group "Nationwide Corp. Group." Nationwide Corp. Group is identified by the National Association of Insurance Commissioners ("NAIC") as Group #0140.  The Nationwide Corp. Group (Defendants) have common ownership, Nationwide Mutual Insurance Company, ("NMIC") and operate in California under common management or control as set forth in Cal. Ins. Code § 1861.16(b).

15.     Plaintiffs and the Class, are or were, at times during the Class Period, legally qualified "Good Drivers" as defined in Cal. Ins. Code §§ 1861.02 and 1861.025.

16.     There is actual or apparent agency among Defendants with respect to the marketing of policies, marketing of GDD, and the resulting legal and contractual responsibilities of each Defendant Company on behalf of the other named Defendant Companies.

17.     Plaintiffs and the Class are all policyholders of Defendants insurers who are or were statutorily defined Good Drivers in the State of California during the Class Period.  Plaintiffs and the Class were entitled to the legally required lowest Good Driver rate for a PPA policy offered by the agents and representatives of the Nationwide Corp. Group (Defendants).

18.     Defendants, through their agents and representatives, have systematically and uniformly failed to provide the lowest Good Driver premium rates to Plaintiffs and the Class, rather overcharging Plaintiffs and the Class and thereby engaging in and continuing to engage in unlawful, unjust, bad faith, fraudulent and/or unfair business practices.

19. Defendants, through the actions of their agents and representatives, have failed to offer and the Defendant insurers have failed to sell, statutorily mandated discounts and Defendants have failed to refund Plaintiffs and the Class for premiums wrongfully taken and retained in violation of Defendants' rate filings, policy and contractual obligations, marketing representations and/or applicable California Code.

**JURISDICTION AND VENUE**

20. This action is properly brought in the Central District of the State of California. This Court has jurisdiction because Defendants' conduct substantial business in the State of California and have intentionally availed themselves of the markets and laws of the State. The Court also has jurisdiction pursuant to Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 Million, exclusive of interest and costs.

21. Members of the Class are residents of states different from one or more Defendants.

22. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) as members of the Class are citizens of states different from one or more Defendants.

23. Venue is proper pursuant to 28 U.S.C. §§ 1391(a) through (c) because Defendants issued the policy contracts, premium billing statements and related forms in this judicial district. Additionally, Defendants maintain a physical presence in this judicial district, the insurance policies at issue in this litigation were offered and issued in this judicial district and/or Plaintiffs' claims arose in this judicial district.

CLASS ACTION COMPLAINT

## **PARTIES**

24.    Plaintiff, Francisco Rocha is a citizen of the State of California and is a customer of Defendants.  Mr. Rocha resides in Lake Elsinore, California in the County of Riverside.

25.    Plaintiff, Ester Rocha is a citizen of the State of California and is a customer of Defendants.  Mrs. Rocha resides in Lake Elsinore, California in the County of Riverside.

26.    Plaintiffs have jointly been loyal customers of Nationwide Corp. Group  (Defendants) and NMIC, for more than ten years.

27.    Plaintiffs have purchased automobile insurance from Defendants. Plaintiffs have purchased two PPA policies from Defendant Amco Insurance Company, ("AMCO").  Plaintiffs and the Class they propose to represent, are Good Drivers as defined by Cal. Ins. Code § 1861.02 and §1861.025.

28.    Defendant, Amco Insurance Company, (AMCO), NAIC #19100 is an insurance company domiciled in the State of Iowa that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

29.    Defendant, Nationwide Insurance Company of America, (NICOA), NAIC #25453 is an insurance company domiciled in the State of Ohio that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

30.    Defendant, Allied Property and Casualty Insurance Company, (Allied), NAIC #42579 is an insurance company domiciled in the State of Iowa that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

31.    Defendant, Victoria Fire and Casualty Company, (VFCC), NAIC #42889 is an insurance company domiciled in the State of Ohio that, at times during

CLASS ACTION COMPLAINT

the Class Period, routinely conducted business and maintained a physical presence in the State of California.

32.    Defendant, Crestbrook Insurance Company, (Crestbrook), NAIC #18961 is an insurance company domiciled in the State of Ohio that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

33.    Defendant, Depositors Insurance Company, (Depositors), NAIC #42587 is an insurance company domiciled in the State of Iowa that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

34.    Defendant, Nationwide Mutual Insurance Company, (NMIC), NAIC #23787 is an insurance company domiciled in the State of Ohio that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

35.    Defendant, Titan Indemnity Company, (Titan), NAIC #13242 is an insurance company domiciled in the State of Texas that, at times during the Class Period, routinely conducted business and maintained a physical presence in the State of California.

36.    All Defendants are related and affiliated companies within the same Control Group, Nationwide Corp. Group, NAIC Group #0140.

37.    Defendant VFCC is owned by THI Holdings (Delaware), Inc., ("THI").    THI is owned by Nationwide Mutual Insurance Company.  Except for VFCC, all the Defendants' Rate Filings, are under the same Common Class Plan. However, during the Class Period, VFCC, has filed separate Rate Filings, with the California Department of Insurance ("CDI").

38.    Each of the Defendant companies charge premiums and issued policies to the Class member policyholders for PPA policies that are subject to the

1 | California Insurance Code Provisions resulting from the passage of Proposition
2 | 103.

3 |      39.    Control Group (Defendants) hold themselves out as a single entity
4 | when marketing their insurance products, offering, through their agents and
5 | representatives, including company employee representatives for directly written
6 | business, a GDD policy for California automobile policyholders.  There is actual
7 | and/or apparent agency among the Defendants with respect to the conduct,
8 | including, but not limited to, the offering of personal lines Good Driver policies
9 | through their agents and representatives, marketing of the policies, marketing of the
10 | GDD and the resulting legal and contractual responsibilities of each of the
11 | Defendant companies on behalf of the other named Defendant companies.

12 |      40.    Throughout the Class Period, Defendants have issued the same and/or
13 | substantially similar personal lines policy forms and coverages, rate filings,
14 | including required lower rates for Good Drivers, and marketing representations
15 | with respect to Good Driver rates.

16 |      41.    A common group of representatives, agents and/or employees of the
17 | Nationwide Corp. Group (Defendants) directed and committed the wrongful acts
18 | alleged here, including over charging Good Driver California policyholders for auto
19 | insurance and failing to reimburse Plaintiffs and the Class for those overcharges.

20 |      42.    The wrongful conduct was perpetrated by each of the Defendants as
21 | members of the same Control Group (Nationwide Corp. Group) all acting in the
22 | State of California.

23 | **BACKGROUND**

24 |      43.    Plaintiffs and the members of the Class, are or were, Good Drivers as
25 | defined in Cal. Ins. Code §§ 1861.02 and 1861.025.  Attached herein as **Exhibit A**
26 | to this Complaint is a copy of Plaintiffs' Declaration Pages which shows Plaintiffs'
27 | Good Driver status.  Plaintiffs and each of the Class members are or were also a
28 | Good Driver policyholder (the policy being defined as in Cal. Ins. Code § 660), and

CLASS ACTION COMPLAINT

1    entitled to be offered by Defendants' agents and representatives, and sold

2    Defendants' legally required lowest available Good Driver premium rates from

3    Defendants' Control Group, during the Class Period.

4         44.    Defendants ratified its agents' and representatives' wrongful acts of

5    failing to offer the lowest Good Driver rate for that type of coverage to Plaintiffs

6    and putative class members.  Defendants failed to sell the lowest GDD policy to

7    Plaintiffs and Class members from an insurer within the common ownership,

8    management or control group, which offers the lowest rates for that coverage.

9                    **DEFENDANTS' WRONGFUL PRACTICES**

10        45.    California Law requires that insurance companies, writing automobile

11   coverage for liability, physical damage, collision or any combination thereof, for

12   defined private passenger vehicles, offer, through their agents or representatives, a

13   GDD to qualified drivers.  (Cal. Ins. Code §§ 1861.02 and 1861.025).  The statutory

14   language reads in part:

15             Cal. Ins. Code § 1861.02

16                          *          *          *

17             Every person who meets the criteria of § 1861.025 shall
             be qualified to purchase a Good Driver Discount policy
18             from the insurer of his or her choice.  An insurer shall not
             refuse to offer and sell a Good Driver Discount policy to
19             any person who meets the standards of this subdivision."
             Cal. Ins. Code § 1861.02(b)(1).  "The rate charged for a
20             Good  Driver  Discount  policy  shall  comply  with
             subdivision (a) and shall be at least 20% below the rate
21             the insured would otherwise have been charged for the
             same coverage.  Rates for Good Driver Discount policies
22             shall be approved pursuant to this article.
23
24
25        46.    The requirements in Cal Ins. Code §§1861.02, 1861.025, and 1861.16
26   are mandatory regardless of the coverage offered.  Such drivers are entitled to
27
28

                                         10

1  purchase the policy with the lowest Good Driver rate for that type of coverage from

2  the Control Group of insurance companies with the lowest rate.

3      47.    California Law requires an agent or representative of an insurer within

4  a Control Group to offer a qualified Good Driver the policy with the lowest rates for

5  that coverage offered by any of the insurers within the Control Group.  This is

6  referred to as the "Cross-Company" offer requirement of Cal. Ins. Code §

7  1861.16(b).  Cal. Ins. Code § 1861.16(b) provides in relevant part as follows:

8

9          An agent or representative representing one or more
10          insurers having common ownership or operating in
        California under common management or control shall
11          offer, and the insurer shall sell, a Good Driver Discount
        policy to a Good Driver from an insurer within that
12          common ownership, management or control group,
        which offers the lowest rates for that coverage.  This
13          requirement applies notwithstanding the underwriting
14          guidelines of any of those insurers or the underwriting
        guidelines of the common ownership, management, or
15          control group.

16

17      As all Defendant companies have common ownership, management or

18  control, their Agents or representatives are required to offer, and the Defendant

19  insurers are required to sell, a Good Driver Discount policy to a Good Driver, from

20  the Defendant insurer with the lowest Good Driver rate.

21      48.    Cal. Ins. Code § 1861.16(b) provides a limited exception to the Cross-

22  Company offer requirement for insurers with common ownership, management or

23  control.  To receive the exception, all insurers in the Control Group, must meet all

24  of the strict criteria establishing genuine and complete company independence

25  ("Separation Requirement"), from the other affiliated insurers in the Control Group.

26  This exception to the Cross Company offer requirement, is known as the ("Super

27  Group Exemption").  The exception is detailed in Cal. Ins. Code §1861.16(c)(1).  It

28  reads in relevant part:

CLASS ACTION COMPLAINT

Notwithstanding subdivision (b), insurers having common ownership and operating in California under common control are not required to sell Good Driver Discount policies issued by other insurers within the common ownership group if the commissioner determines that the insurer satisfies each of the following conditions:

(A)    The business operations of the insurers are independently managed and directed;

(B)    The insurers do not jointly develop loss or expense statistics or other data used in rate making, or in the preparation of rating systems or rate filing;

(C)    The insurers do not jointly maintain or share loss or expense statistics, or other data used in rate making or in the preparation of rating systems or rate filings. This condition shall not apply if the data is generally available to the industry through a non-affiliated third party and is obtained from that third party;

(D)    The insurers do not utilize each other's marketing sales, or underwriting data;

(E)    The insurers act independently of each other in determining, filing, and applying base rates, factors, class plans, and underwriting rules, and in the making of insurance policy forms;

(F)    The insurers' sales operations are separate;

(G)    The insurers' marketing operations are separate; and,

(H)    The insurers' policy service operations are separate.

Cal. Ins. Code § 1861.16(c)(1)

49.    The limited Super Group Exemption, exempts insurers that are under common ownership, management or control, from the Cross Company offer requirement. However, all eight of the exemption criteria must be strictly adhered to at all times, to permit the Control Groups' insurers, to operate with the Super Group Exemption. This current version of Cal Ins. Code §1861.16(c)(1)[A-H], became the law on January 1, 2005.

50.    All of the aforementioned exception criteria outlined in Cal. Ins. Code §1861.16(c)(1)[A-H] must be strictly met at all times. Otherwise, the Defendants' agents and representatives must Cross-Company offer and the Defendants must sell,

CLASS ACTION COMPLAINT

1    to statutorily defined Good Drivers, the PPA policy from the Nationwide Corp.

2    Group, with the lowest Good Driver Discounted rate.

3        51.    However, the Defendants, during the Class Period did not comply with

4    eight criteria enumerated in §1861.16(c)(1)[A-H].  Therefore, Defendants were not

5    entitled to the Super Group Exemption. Accordingly, Defendants' agents and

6    representatives, must abide by the Cross-Company offer requirement, and thus must

7    offer the lowest GDD policy and the Defendants must sell the lowest GDD policy

8    which offers the lowest Good Driver rate "for that coverage" from all the

9    Defendants' insurers, to the Plaintiffs and the Class they purport to represent.

10       52.    "For that coverage" is a term that refers to the same *general policy* type

11   of coverage for the three types of coverage listed (liability, physical damage and

12   collision) in Cal. Ins. Code §§ 660(a)-(d).  Cal. Ins. Code §660 is referenced in

13   §1861.16(a) pertaining to the definition of a "policy" and thus relates to the same or

14   substantially similar coverage for the same general policy type.

15       53.    As a result of the Defendants' agents and representatives failing to

16   offer the lowest Good Driver rate for the coverages, and as a result of the

17   Defendants failing to sell the lowest Good Driver rate to the Plaintiffs and the Class

18   members, the Defendants, all within the same Control Group, have charged

19   excessive premiums and continue to unlawfully retain the excessive premiums

20   owed.

21       54.    Although the Plaintiffs and the Class members they seek to represent,

22   were all Defendants' insureds, that were qualified for, and entitled to receive, the

23   lowest Good Driver rate for that coverage, the contractually and legally required

24   lowest premium rate was not given to Plaintiffs or the members of the Class.  The

25   charged policy premium amounts for personal lines automobile coverages were in

26   excess of Defendants' approved policy premiums contained in their regulatory rate

27   filings and/or in violation and breach of the expressed and/or implied marketing

28   representations of Defendants.

CLASS ACTION COMPLAINT

55.    Defendants do not satisfy all of the eight conditions enumerated in Cal. Ins. Code § 1861.16(c)(1)[A-H].  Therefore, Defendants do not qualify for the Super Group Exemption.  Absent the exemption, agents and representatives for the Defendants must Cross Company offer and the Defendants must sell, to the Plaintiff and the Class Members, the lowest Good Driver rate available, among all Defendant insurers.  The company with the lowest Good Driver rate is from VFCC.  A PPA policy of insurance from VFCC, was not offered to the Plaintiffs or Class Members, by the Agents and Representatives of the Defendants.  Had it been offered, Plaintiffs and the Class Members would have accepted the offer and purchased a PPA policy of insurance from VFCC.

56.    During the Class Period, Defendants filed "Exhibit 19s" with the California Department of Insurance, (CDI) for each of the Defendant companies in the Nationwide Corp. Group.  In doing so, Defendants declare, under oath, that they are, and will continue operating each individual Defendant insurer, completely separate and independent, ("Separation Requirement").  The Separation Requirement, (as set forth in §1861.16(c)), is an on-going duty that the Defendants must at all times maintain, in order to satisfy the Super Group Exemption from the Cross Company offer requirement.  Failing to meet any of the eight requirements listed in Cal. Ins. Code §1861.16(c)[A-H], will immediately result in the removal of the Defendants' Super Group Exemption.

57.    Exhibit 19 is a form that must be included in a filing by an insurance company to assert such facts as the insurer represents will qualify the insurer for the Super Group Exemption from the restrictions of Cal. Ins. Code §1861.16, that are placed upon an insurer that operates within a Control Group.  However, the filing of an Exhibit 19 is not a certification that an insurer qualifies for the Super Group Exemption, rather it is merely an assertion and declaration under oath by the insurer.  Truthfulness in the Exhibit 19 and compliance with Cal. Ins. Code §1861.16 are duties imposed by law upon the insurer submitting an Exhibit 19.

14

1    Defendant insurers have a duty to strictly maintain at any time and at all times, the

2    eight enumerated criteria in §1861.16(c)(1) for purposes of receiving and

3    maintaining a Super Group Exemption, from the Cross-Company offer requirement.

4         58.    Filing an Exhibit 19 and/or the approval of a rate filing that includes

5    an Exhibit 19, does not grant an insurer a Super Group Exemption, or release an

6    insurer from their statutory obligation to comply with §1861.16(b).  That exemption

7    is only earned through continuous compliance with § 1861.16(c)(1).

8         59.    The Defendants have declared, during the Class Period, that they were

9    and continue to satisfy each of the eight criteria outlined in Cal. Ins. Code

10   §1861.16(c)(1), presumably entitling the Defendants to the Super Group

11   Exemption. However, the Defendants failed to comply with several of the

12   Separation Requirements enumerated in §1861.16(c)(1).  During the Class Period,

13   Defendants failed and continue to fail to meet the strict Separation Requirements of

14   §1861.16(c)(1)(A),(F),(G) and (H).

15        60.    Accordingly, Defendants' agents and representatives, all of whom

16   Defendants controlled for purposes of this Complaint, were and are legally

17   obligated to offer and the Defendants were and are legally obligated to sell the

18   policies with the lowest available Good Driver rates from any of the insurers in the

19   Nationwide Corp. Group, as set forth in §1861.16(b).  In failing to do so,

20   Defendants have unlawfully offered, charged and retained, excessive premiums

21   from Plaintiffs and members of the Class.

22        61.    Plaintiffs and the members of the Class paid insurance premiums for

23   automobile insurance which has been overcharged by Defendants.  Had the

24   Defendants' agents and representatives offered the lowest Good Driver rate

25   available from the Defendants' companies, and had the Defendants' companies sold

26   the Plaintiffs the policies with the lowest Good Driver rate, the Plaintiffs and the

27   Class Members would have accepted the lower Good Driver rate from the

28   Defendants' insurers.

62.    Defendants did not inform the overcharged Plaintiffs and members of the Class of their right to be reimbursed for their premium overpayments and did not make the required reimbursement when overcharges were discovered.  Rather, the Defendants maintained substantially uniform and systematic policies, procedures and practices designed to conceal this wrongful conduct from the Plaintiffs and the Class.

63.    Because of the Defendants' act of concealment and ongoing fraudulent actions, Plaintiffs and the Class were not reasonably able to discover the Defendants' wrongful conduct and/or premium overcharges.

64    With regard to Plaintiffs, Francisco Rocha and Ester Rocha, they were sold a policy by Defendant, AMCO, which is a company owned by NMIC and controlled by Control Group, Nationwide Corp. Group.  The policy of insurance was offered by Schoolsfirst Insurance Services, an independent agent for the Defendants.  The offer from Defendants' agent was for Defendant AMCO to sell a Good Driver discounted PPA policy to the Plaintiffs. As a result of the offer, Plaintiffs accepted it and Defendants sold the policy to the Plaintiffs.

65.    At no time during the Class Period, did Defendants' agents or representatives, offer a PPA policy from Defendant VFCC.  Had a policy of insurance been offered by the Defendants' agents or representatives and sold by the Defendants, the Plaintiffs would have accepted the policy from VFCC, which did contain a lower Good Driver rate.

66.    The policy of insurance offered by Defendants' agent and sold by Defendants did contain a GDD under the General Policy Information as indicated on Page 1 of **Exhibit A** attached herein.

67.    Page 3 of **Exhibit A** identifies the Defendants' agent- It reads in part: "How to contact us…Your Allied agent--- SCHOOLSFIRST INSURANCE SERVICES."

CLASS ACTION COMPLAINT

68.    Page 3 of **Exhibit A** identifies the Defendant insurance company for which the agent offered the policy.  It reads in part: "Issued By: Amco Insurance Company, … By: Schoolsfirst Ins. Services."

69.    Page 3 of **Exhibit A** provides the "Premium Summary."  The "Total Policy Premium" covering the six-month policy period is indicated as $923.62.  At the same time, for the same policy period and for the same or substantially similar coverages for the identical vehicles, Defendant VFCC had policies available which also contained a Good Driver rate that should have been offered by Defendants' agents or representatives and sold by Defendants to Plaintiffs, which would have included a "Total Policy Premium" of $817.75.  The Defendants' Agents and Representatives were required to offer and Defendants were required to sell to Plaintiffs Francisco Rocha and Ester Rocha, a policy of insurance from VFCC for $105.87 less than what they were charged and paid for the same six-month period from the AMCO policy.

70.    At all times herein, Schoolsfirst Insurance Services was acting as an agent and representative in its capacity on behalf of Defendant, AMCO and Defendants' Control Group (Nationwide Corp. Group).  When the agent fraudulently failed to offer to the Plaintiffs, the lowest Good Driver rate from the Defendants' insurers, the Defendants' ratified the agent's actions.

71.    Schoolsfirst Insurance Services did not offer to sell and the Defendants did not sell to the Plaintiffs, a policy of insurance from the Defendant insurer that contained the lowest Good Driver rate, which would be from Victoria Fire and Casualty Company, (VFCC).

72.    As Defendants' Control Group does not qualify for the Super Group Exemption, Defendants' agents and representatives were required to Cross Company offer and the Defendants were required to sell a PPA from VFCC as it had the lowest Good Driver rate from the Defendant companies that are under the common ownership and control of NMIC and the Control Group.

CLASS ACTION COMPLAINT

1    73.    The Plaintiffs would have accepted the lower Good Driver rate policy

2    had the Plaintiffs been offered it from the Defendants' Agents or Representatives

3    and had the Defendants' Control Group sold it to the Plaintiffs.

4    74.    At all times, during the Class Period, the Defendants', their Control

5    Group (Nationwide Corp. Group), and owner (NMIC) were not entitled to a Super

6    Group Exemption of the Cross-Company Offer requirement as outlined in Cal. Ins.

7    Code § 1861.16(c). Therefore, the Plaintiffs and the members of the Class expected

8    that Defendants, through their agents and representatives, would offer and

9    Defendants would sell, policies with the lowest available Good Driver rate "for that

10   coverage" as defined in Cal. Ins. Code §660.

11   75.    Throughout the Class Period, Defendants have engaged in the course

12   of conduct designed to conceal and or avoid the contractual, legal and equitable

13   obligations to policyholders who have been wrongfully denied the lowest Good

14   Driver rates for the coverages they were sold. Defendants did not inform

15   policyholders who had been overcharged of their right to be reimbursed for their

16   premium overpayments, and did not offer to or make the required reimbursement.

17   76.    The Control Group (Defendants) maintained substantial uniform and

18   systematic policies, procedures and practices designed to conceal this wrongful

19   conduct from Plaintiffs and the Class.

20   77.    By violating their contractual, legal and equitable obligations,

21   Defendants have acted unreasonably, in bad faith, and in violation of their special

22   fiduciary duties including the implied covenant of Good Faith and Fair Dealing and

23   have thereby significantly increased their profits at the expense of their

24   policyholders.

25                              **CLASS ALLEGATIONS**

26   78.    This action is properly brought as a Class Action seeking certification

27   pursuant to Fed. R. Civ. P. 23(B)(2) and Rule 23(B)(3) for the reasons that this

28

1  action satisfies the numerosity, commonality, typicality, and adequacy

2  requirements.

3      The class is a Rule 23(B)(2) class and a Rule 23(B)(3) class defined as

4  follows:

> ALL PERSONS OR ENTITIES IN THE STATE OF CALIFORNIA WHO WERE (1) INSURED BY ANY OF THE DEFENDANTS FOR MOTOR VEHICLE COVERAGE ANYTIME FROM JANUARY 1, 2009 THROUGH 2017 AND (2) WERE STATUTORILY DEFINED GOOD DRIVERS PURSUANT TO CAL. INS. CODE §660 AND (3) DID NOT RECEIVE THE LOWEST GOOD DRIVER RATE FROM THE DEFENDANT THAT HAD THE LOWEST GOOD DRIVER DISCOUNT POLICY FOR THAT PERIOD.

79.    **Numerosity.** The Class is numerous such that joinder of all Class Members is impractical.  Plaintiffs do not know the exact number and identity of Class Members; however, the Class may contain thousands of Members. Attempting to join and name each Class Member would be unreasonable and impracticable.

80.    **Commonality.** Common questions of law and fact exist as to all Members of the Class and predominate over questions affecting only individual Class Members.  The common, legal and factual questions include, but are not limited to the following:

(a)    Whether agents and representatives of Defendants Control Group failed to offer and Defendants Control Group failed to sell, Plaintiffs and the Members of the Class, the California PPA with the lowest Good Driver rate available among Defendants' Common Ownership, Management or Control Group as contained in Defendants' rate filings;

CLASS ACTION COMPLAINT

1     (b)    Whether Defendants' failure to reimburse Plaintiffs in the Class for the

2               alleged overcharged premiums is a contractual breach and/or a

3               violation of Cal. Ins. Code § 483;

4     (c)    Whether Defendants were required to inform Plaintiffs and the Class

5               who were good drivers, as statutorily defined, of the premium

6               overcharges;

7     (d)    Whether Defendants' failure to inform and reimburse Plaintiffs and the

8               Class was a violation of their special fiduciary responsibilities

9               including the implied covenant of good faith and fair dealings;

10    (e)    Whether Plaintiffs and the Class are entitled to restitution,

11              disgorgement, and other appropriate equitable relief;

12    (f)    Whether Defendants have failed to disclose material facts the Plaintiffs

13              and the Class, through misrepresentation and/or concealment about the

14              policies available in their Control Group with the lowest available

15              Good Driver rates and their lowest available personal auto premium

16              charges/overcharges;

17    (g)    Whether Defendants have engaged in an actionable course of conduct

18              designed to avoid and/or conceal their contractual and legal obligations

19              to Plaintiffs and the Class, including an obligation to reimburse the

20              Plaintiffs and the Class Members for the overcharges;

21    (h)    Whether Defendants have engaged in acts of unfair competition

22              through either an Unlawful Business Practice, an Unfair Business

23              Practice, or a Fraudulent Business Practice;

24    (i)    Whether the Plaintiffs and the Class have sustained damages and the

25              proper measure of those damages;

26    (j)    Whether the Plaintiff and the Class are entitled to an award of Punitive

27              Damages against Defendants; and,

28

CLASS ACTION COMPLAINT

1    (k)    Whether the Plaintiffs and the Class are entitled to recover their costs,

2    Attorneys' Fees and Prejudgment Interest.

3    81.    **Adequacy.** The Plaintiffs will fairly and adequately represent the

4    interests of the Class.  Plaintiffs have no interests that are antagonistic to those of

5    the Class.  Plaintiffs have the ability to assist and adequately protect the rights and

6    interests of the Class during litigation.  Further, Plaintiffs are represented by

7    Counsel who are competent and experienced in this type of Class Action Litigation.

8    82.    The claims of the representative Plaintiffs are typical of the claims of

9    the Class.  There are no conflicts of interest between the Plaintiffs and the Class.  A

10    Class Action is an appropriate method for the effective adjudication of the

11    controversy because there is no benefit to Class Members individually controlling

12    the prosecution of separate actions.  Furthermore, damages sustained by individual

13    Class Members are relatively small and the expense and burden of individual

14    litigation makes it impossible for the Class Members individually to redress the

15    wrongs done to them.  When liability is determined, the claims of all Class

16    Members can be determined through routine mathematical calculations and thus,

17    can be determined by the Court and administered efficiently in a manner that is far

18    less erroneous, burdensome and expensive than if it were attempted through filing,

19    discovery and Trial of many individual cases.  This Class Action will promote the

20    orderly, efficient, and expeditious and appropriate adjudication and administration

21    of Class Claims to promote economies of time and resources.  This Class Action

22    will assure uniformity of decision among Class Members.  The resolution of this

23    controversy, through this Class Action, presents fewer management difficulties than

24    individual claims filed in which the parties may be subject to varying adjudication

25    of their rights.

26    83.    Common liability exists between Defendants and all the Members of

27    the Class.  Thus, a Trial of the Plaintiffs' claims will decide liability issues for all

28    the Members of the defined Class.

84.    Furthermore, Class treatment is appropriate because Defendants have acted on grounds generally applicable to the Class, making Class-wide equitable, injunctive, declaratory and monetary relief appropriate.  In addition, the prosecution of separate actions by or against individual Members of the Class would create a risk of incompatible standards of conduct for Defendants and inconsistent or varying adjudications for all parties.

## TOLLING AS A RESULT OF ONGOING CONCEALMENT

85.    Defendants knew and concealed from Plaintiffs and the Class that Defendants' agents and representatives, all of whom Defendants controlled with respect to the matters alleged in this Complaint, were not providing the required Cross-Company offer for all companies in Defendants' Control Group and that Defendants were overcharging premiums to the Plaintiffs and the Class.

86.    Defendants' agents and representatives failed to offer and Defendants failed to sell, the policies from their Control Group with the lowest Good Driver rates that were legally required under applicable law, and/or contained in Defendants' Control Group regulatory filings.

87.    Defendants' officers, management and other employees, knew since 2009, that they were violating the assertions and declarations made in their Exhibit 19 filing, wherein they declared under oath, that they were entitled to a Super Group Exemption, and thus, not required to Cross-Company Offer the policy with the lowest Good Driver rate from the various Defendants' within the Control Group.

88.    For years, their concealed non-compliance with California Law continued.  In or around 2016, it was discovered that Defendants had not been entitled to the Super Group Exemption, since 2009 and at all times during the Class Period.  Accordingly, the Defendants' agents and representatives were required to Cross-Company offer the lowest Good Driver rate from the Control Group and the

1  Defendants were required to sell the lowest Good Driver rates to the Plaintiff and

2  Class Members from on or around January 1, 2009 until 2017.

3       89.    It was discovered that the Defendants' Exhibit 19's contained false

4  direct and indirect representations of material fact.  The Defendants claimed:

5       (i)    The business operations of the insurers are independently managed and

6              directed; [§1861.16(c)(1)(A)]

7       (ii)   The insurers' sales operations are separate; [§1861.16(c)(1)(F)]

8       (iii)  The insurers' marketing operations are separate; [§1861.16(c)(1)(G)]

9              and,

10      (iv)   The insurers' policy service operations are separate.

11  [§1861.16(c)(1)(H)]

12      90.    Because of Defendants' act of concealment and ongoing fraudulent

13  actions as hereinafter explained, the Plaintiffs and the Class were not reasonably

14  able to discover Defendants' wrongful conduct and/or the premium overcharges for

15  the reasons more fully set forth in Count IV (Fraud) in this representation.

16      91.    Defendants have, during all relevant times throughout the Class Period,

17  a special fiduciary and contractual duty to Plaintiffs and the Class to disclose the

18  improper premium charges and refund the overcharges.

19      92.    As a result of Defendants' misrepresentations and fraudulent

20  concealment, the Defendants are equitably estopped from asserting a statute of

21  limitations defense.

22                          **COUNT I**
23                   **BREACH OF CONTRACT**

24      93.    Plaintiffs reallege the allegations contained in the Paragraphs above as

25  if fully set forth herein.

26      94.    Defendants entered into a Standard-Form Private Passenger Personal

27  Lines Automobile Insurance Contract with the Plaintiffs and the Class Members

28  they seek to represent.  The policies of insurance are defined in Cal. Inc. Code §

1   660.  These are binding contracts under which the rates were to be accurately

2   charged in accordance with Defendants fixed rate plans and applicable California

3   Law.

4       95.    The premiums due for insurance coverage under these policies were to

5   be determined by applicable contractual understanding and/or regulatory filings

6   including qualified Good Driver rates pursuant to Cal. Inc. Code §§ 1861.02 and

7   1861.025.

8       96.    Plaintiffs and the Class reasonably expected that Defendants would

9   comply with California Law and regulations by offering, through their agents and

10  representatives, and selling policies with the lowest Good Driver rates available in

11  Defendants' Control Group for each Class Member policyholder eligible for the

12  discount.

13      97.    Plaintiffs were charged a "Total Policy Premium" of $923.62 as

14  offered by Defendants' agent, Schoolsfirst Insurance Services and sold by

15  Defendant AMCO.  The policy period was May 4, 2016 through November 4,

16  2016, bearing policy number PPA 0026619177-3, as noted on Page 3 of **Exhibit A**

17  attached herein.

18      98.    At this same time, for the same policy period and for the same or

19  substantially similar coverages, Defendant VFCC had a policy available that should

20  have been offered by Defendants' agents and representatives and sold by

21  Defendants to Plaintiffs for a "Total Policy Premium" of $817.75.  Defendant

22  Control Group Companies' agents and representatives were required to offer and

23  Defendants were required to sell, to the Plaintiffs a policy from VFCC for $105.87

24  less for the six-month policy period than they were charged and paid.

25      99.    Each policy holder in the Class was also overcharged for their

26  premiums shown on their policy Declarations Pages, which stated premium

27  amounts non-compliant with Cal. Ins. Code §§ 1861.02 and 1861.025, as they were

28

CLASS ACTION COMPLAINT

charged higher than the lowest Good Driver rates available from the companies
within Defendants' Control Group.

100.    Plaintiffs and the Class were issued the above described PPA policies
by Defendants, which required the payment of premiums that were billed by
Defendants and were required to be paid in order to obtain or maintain the coverage
promised in the policy contracts.

101.    Each of the Class Members was a Good Driver policyholder as defined
in Cal. Ins. Code §§ 1861.02 and 1861.025 and entitled to be offered and sold
Defendants' advertised, filed and legally required lowest available Good Driver
premium rates from the Control Group Defendant Companies at clearly
ascertainable times during the Class Period.

102.    Defendants' breached their policy contracts with Plaintiffs and the
Class by their agents and representatives' failure to offer and Defendants
Companies' failure to sell, the lowest Good Driver rate from the Defendant
company that had the lowest available Good Driver rate in the Control Group.

103.    Compliance with the Law in the business of insurance is a matter
recognized by the California Legislature in enacting the Private Enforcement
Authorization found in Cal. Ins. Code § 1861.03(a).  A contractual provision
regarding legality is also recognized by the Defendant companies as indicated in the
Defendants' Standard Form Agreements issued to Plaintiffs and the Class.  A
certified copy of Plaintiffs' policy has not been provided and currently not in the
possession of the Plaintiffs, rather, the policies are in the possession of the
Defendants.

104.    California Vehicle Code ("CVC") §16058 provides that all California
PPA insurance policies containing liability coverage are subject to mandatory
electronic reporting, a type of legally required certification by insurance companies
of "Financial Responsibility" pertaining to their insureds.  As such, the California
PPA policies issued to Plaintiffs and the Class are uniformly required by their

1 | expressed terms to "comply with the law to the extent required." This contractual

2 | promise to "comply with the law" drafted by Defendants and included in their

3 | policies, was breached when the Defendant Control Group Companies violated the

4 | provisions of Cal. Ins. Code §1861 as set forth above.

5 |     105. All conditions precedent have been performed by Plaintiffs and the

6 | Class.

7 |     106. Defendants materially breached the contractual terms in their

8 | advertised and marketed Good Driver rates as well as their advertised and marketed

9 | promise, offered to Plaintiffs and the Class; rates that were presumed in law to be

10 | legally compliant with the California Insurance Code requirement that the lowest

11 | Good Driver rate policy for that coverage be offered by Defendants' agents and

12 | representatives and sold by the Companies in the Control Group.

13 |     107. Plaintiffs and the Members of the Class would have accepted the lower

14 | premiums and purchased the lower premium Good Driver rate policies with the

15 | same or substantially similar coverage had it been offered, as legally required.

16 |     108. As a result of Defendants' material breaches of these contracts,

17 | Plaintiffs and the Members of the Class are entitled to an award of damages.

18 | Alternatively, Plaintiffs and the Members of the Class are entitled to specific

19 | performance in the form of reimbursement for the overpayments.

20 | **COUNT II**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

21 |     109. Plaintiffs reallege the allegations contained in the Paragraphs above as

22 | if fully set forth herein.

23 |     110. Defendants entered into Standard-Form Private Passenger Automobile

24 | Insurance Contracts with Plaintiffs and the Class Members, thereby creating an

25 | insurer-insured special fiduciary relationship between Defendants, Plaintiffs and

26 | each Class Member.

27 |

28 |

CLASS ACTION COMPLAINT

111.    Defendants therefore owed a heightened duty under the law to treat each policy holder with good faith and fair dealing, including duties to:

(a)    Accurately determine and offer, through their agents and representatives within the meaning of Cal. Ins. Code § 1861.16(b), all of whom Defendants controlled for all matters alleged herein, their lowest available filed and approved premium rates for good drivers from the California License Company within Defendants' Control Group;

(b)    Accurately calculate and charge premiums due from Good Driver policy holders for the lowest available Good Driver rates offered by Defendants' California- Licensed Companies within Defendants' Control Group;

(c)    Fully and promptly disclose any inaccuracies and overcharges at the time they were discovered;

(d)    Promptly resolve any premium overcharges that were inconsistent with Defendants' expressed and/or implied representations made and/or filed rate plans;

(e)    Promptly reimburse policyholders for overcharges; and,

(f)    Otherwise comply with governing law.

113.    Defendants acted unreasonably, without proper cause and unlawfully in relationship to the Plaintiffs and Class Members, including by:

(a)    The failure of Defendants' agents and representatives to offer policies with lowest Good Driver rates and premiums in compliance with their contractual obligations, advertised representations, and/or rate filings made by Defendants' California Licensed Companies within Defendants' Control Group;

(b)    Overcharging the Class by not selling the policy with the lowest Good Driver rate for the coverages available from the Defendant Companies

27

CLASS ACTION COMPLAINT

1           in their Control Group, failing to disclose the overcharges and

2           withholding payment without proper cause;

3     (c)   Failing to disclose and/or actively concealing material information

4           concerning the rates charged to Plaintiffs and the Class; and/or,

5     (d)   Breaching their duties to Plaintiffs and the Class members.

7     112.   Defendants' bad faith, unfair and deceptive conduct violates the

8 implied covenant of good faith and fair dealing.

9     113.   Defendants knew their lack of disclosure, concealment of their conduct

10 and failure to reimburse premiums to Plaintiffs and the Class was unreasonable and

11 without justification, and/or Defendants deliberately acted in reckless disregard of

12 Plaintiffs' and Class Members' rights and in a manner that they knew would cause

13 them financial harm.

14     114.   Defendants' bad faith, unfair, deceptive and unlawful conduct has

15 harmed the Plaintiffs and the Members of the Class.  Plaintiffs and the Class are

16 therefore entitled to damages under the law in an amount to be established at Trial.

17     115.   Defendants' bad faith, unfair, deceptive and unlawful conduct was

18 knowing, deliberate, wanton, willful, outrageous, malicious, and undertaking the

19 conscious disregard of and with reckless indifference to, the Plaintiffs' and the

20 Class Members' interests and otherwise of a character warranting the imposition of

21 Punitive Damages.

**COUNT III**
**FRAUD AND MISREPRESENTATION**

23     116.   Plaintiffs reallege the allegations contained in the Paragraphs above as

24 if fully set forth herein.

25     117.   Defendants have each been authorized and licensed to write PPA

26 insurance policies in California since prior to the commencement of the January 1,

27 2009 Class Period.  Defendants AMCO, NICOA, Allied, VFCC, Crestbrook,

28

1    Depositors, and NMIC are members of the same Control Group of insurance

2    companies, (Nationwide Corp. Group) and same ownership, NMIC.

3        118.    Throughout the Class Period, VFCC has filed separate and different

4    Rate Filings from the remaining Defendants.  During this time, the remaining

5    Defendants filed the same Rate Filing (Common Class Plan).

6        119.    The separate and different Rate Filing of VFCC, results in a lower

7    Good Driver rate than the Good Driver Discounted rates of the remaining

8    Defendants, for the Plaintiffs, for the same or substantially similar coverage, during

9    the same policy period and for the same vehicles.

10        120.    However, as the Defendant Companies' agents and representatives

11    failed to Cross Company offer, and the Defendants failed to sell the PPA policy

12    with the lowest Good Driver rate to the Plaintiffs, the Plaintiffs were overcharged

13    $105.87 for the six-month policy period.

14        121.    During the Class Period, AMCO and the other Defendants, despite

15    having the same common ownership (NMIC), management or control, (Nationwide

16    Corp. Group), have claimed by virtue of their filing of Exhibit 19's with the CDI,

17    that their agents, representatives and Defendants, have a Super Group Exemption,

18    from the Cross Company offer requirement.

19        122.    However, the facts reveal that during the Class Period, NMIC, the

20    owner of Defendant insurers, and THI Holdings (Delaware), Inc. ("THI"), began an

21    illegal service plan for THI, the Holding Company for VFCC.  NMIC began

22    providing in-depth, business, marketing and sales services for THI (VFCC), in

23    direct contravention of the Separation Requirements, which must be strictly adhered

24    to, pursuant to §1861.16(c)(1).  Thus, the Defendants, began violating their own

25    declarations of their previously filed Exhibit 19's with the CDI.  The Defendant

26    Control Group of companies, no longer had complete and genuine independence

27    from each other, which is a fraudulent, actionable and material misrepresentation, to

28    the CDI.

CLASS ACTION COMPLAINT

123.   The service plan that NMIC undertook for THI (VFCC) began in 2009 and continued throughout the Class Period.  In 2009, NMIC began providing in-depth marketing service, customer insights and analytics, financial analysis and other business activities for THI (VFCC).  Defendants purposefully concealed their shared and combined business plan, from the CDI, Plaintiffs and the Class.

124.   The CDI, Plaintiffs and the Class were never informed and never became aware of, the fact that the Defendants, had begun a business model that violated the Separation Requirements, detailed in Cal. Ins. Code §1861.16(c)(1).  These services were in direct violation of their Exhibit 19 filings with the CDI and immediately removed their purported Super Group Exemption status, requiring the Defendants to Cross Company offer the lowest Good Driver rate, among all affiliated Defendant companies.

125.   NMIC's services for THI (VFCC), also included the illegal consultation and lead development and execution of the creative, tactical plan and brand work for VFCC's strategy.  In 2009 and throughout the Class Period, NMIC also managed and budgeted various marketing initiatives and performed other marketing related tasks, along with managing external agencies, all of which violated the Separation Requirements the Defendants' testified to the CDI that they would maintain, pursuant to their Exhibit 19 filings.

126.   NMIC's services for THI (VFCC) also provided that NMIC consult and assist VFCC in conducting market data analysis and market data research, and provided marketing data management and customer information management services.  All of these services provided by NMIC for THI (VFCC) violated §1861.16(c)(1).

127.   NMIC's additional services for THI (VFCC), reveals that NMIC provide marketing training sessions, information exchanges, employee-oversight, and other similar activities, for THI (VFCC) all of which are in direct violation of §1861.16(c)(1).

CLASS ACTION COMPLAINT

128.    The aforementioned services provided by NMIC for THI (VFCC), as outlined herein, was not conducted at arm's length.  Rather, they were conducted at the regional level by employees and teams since 2009 and throughout the Class Period.  The operations of NMIC and THI (VFCC) were not acting separate and independent.  Nor were the services provided a temporary arrangement, rather it was a permanent and on-going agreement between NMIC and THI (VFCC), throughout the Class Period.

129.    Starting in 2009, and continuing throughout the Class Period, the Defendants and THI (VFCC) concealed their illegal on-going fraudulent activity from the Plaintiffs, Class members and the CDI.

130.    Misrepresentations and omissions, have been made by Defendants, and continued to be made throughout the Class Period, through their agents and representatives, business employees, marketing employees, sales employees including the Defendants' business product producers that are authorized to transact business for the Defendants.

131.    In addition to the above, Defendants' misrepresentations, omissions and concealment, includes the false and material misrepresentations made in the Exhibit 19's filed by the Defendants with the CDI since January 1, 2009 and throughout the Class Period.  The written misrepresentations include materially false statements that: "all business operations, marketing, and sales operations and activities of Defendants operate completely separate and independent from each other, pursuant to 1861.16(c)(1)."

132    Plaintiffs and the Class did not become aware of the facts giving rise to their causes of action and Defendants' fraudulent concealment, until after 2016.  Plaintiffs discovered through privileged communications with their Counsel, the material misrepresentations and fraudulent conduct alleged throughout this Complaint.

CLASS ACTION COMPLAINT

133.   On or around January 1, 2009, and during the Class Period, Cecil Autry, former Associate Vice President, Regional Counsel for NMIC, had an obligation to make certain, that the implementation of all NMIC programs, complied with all requirements of the California Insurance Code (CIC) and California Law.  Cecil Autry played a key role in the development and implementation of an illegal service agreement between NMIC and THI (VFCC). He acted in an actionable fraudulent fashion by continuing to conceal from the CDI, Plaintiff and the Class, the illegal services between NMIC and THI (VFCC).

134.   Since 2009, Cecil Autry had knowledge that Defendants, continued to write PPA policies in California under a falsely claimed Super Group Exemption. He became aware of these facts through his job duties with NMIC, which includes the oversight of California Law and California Insurance Regulations pertaining to the marketing and sales of PPA's.  He knew that the CDI was not aware of the fact, that NMIC was performing illegal services for the marketing, sales and business operations for THI (VFCC).  He knew that by NMIC performing the aforementioned services for THI (VFCC), NMIC, no longer maintained the Separation Requirement between insurers with common ownership, thus there were no longer qualified for the Super Group Exemption and must Cross Company offer the lowest Good Driver rate from among all the Defendants.  He knew that the Defendants were making a false claim to the CDI (i.e. that the Defendants were acting with genuine and complete independence from each other.)  He therefore knew, that the Defendants were violating the Separation Requirements, made in their statements pursuant to their Exhibit 19 filings.

135.   Anne Saxon, is General Counsel for NMIC since before 2009.  In her role, she is responsible for the oversight of California Law and California Insurance Regulations pertaining to the marketing and sales of PPA's.  In 2009, Saxon was informed of Defendants' non-compliance with Cal. Ins. Code §1861.16(c)(1). Saxon was aware that during that time, Defendants continued to write PPA policies

1   in California under a falsely claimed Super Group Exemption.  Saxon, thru her job

2   duties for NMIC, became aware of the illegal services, as outlined herein, between

3   the Defendants.

4       136.   Anne Saxon, played a key role in the approval of the development and

5   implementation of the illegal service agreement between NMIC and THI (VFCC).

6       137.   Saxon was informed of the non-compliance of §1861.16(b), requiring

7   companies that are not otherwise exempt, to Cross Company offer the PPA with the

8   lowest Good Driver rate, from among all the Defendant affiliated insurers.  Saxon

9   concealed the Defendants' illegal activities, from the Plaintiffs, Class Members and

10  the CDI.  Saxon never informed the CDI that since around January 1, 2009 and

11  throughout the Class Period, the Defendants were not operating with genuine and

12  complete independence, and thus were non-compliant with their filing of their

13  Exhibit 19's with the CDI, and thus, they were not entitled to the Super Group

14  Exemption, they purported to operate under.

15      138.   Paul Ballew, Jen Hanley and Tony Gonsalves, under information and

16  belief, were all employees of NMIC since around 2009 and at times, during the

17  Class Period.  All had significant roles in the subject matter of the services being

18  provided by NMIC for THI (VFCC) since it began on or around January 1, 2009.

19  All were involved in the illegal marketing efforts between NMIC and THI (VFCC).

20  They became aware through meetings, seminars, and various communications, of

21  the material misrepresentations, omissions, concealment and actionable conduct

22  being taken by the Defendants.

23      139.   Ballew, Hanley and Gonsalves, were aware that the CDI was never

24  informed by the Defendants, Control Group or NMIC, or any affiliated entity, that

25  NMIC, in 2009, had begun the various illegal activities for THI (VFCC) as outlined

26  herein.  All three were aware that the Defendants' conduct violated the Separation

27  Requirements of §1861.16(c)(1), and thus the Defendants were operating their

28

CLASS ACTION COMPLAINT

1   business illegally when they failed to Cross Company offer the PPA policy with the
2   lowest Good Driver rate, among all the Defendants' insurers.

3          140.   Each of these officers, managers and employees, has knowledge of the
4   Defendants' material misrepresentations, omissions, fraudulent conduct and non-
5   compliance regarding the violations of the Separation Requirements.  Thus, the
6   Defendants were not entitled to the Super Group Exemption status.  Accordingly,
7   each of these officers, managers and employees are aware that since 2009, and
8   throughout the Class Period, the Defendants' were required to Cross Company offer
9   the PPA policy with the lowest Good Driver rate, among all the Defendant insurers.

10         141.   Throughout the Class Period, each of these officers, managers and
11  employees, had knowledge that the Defendants concealed from the Plaintiff, Class
12  Member and CDI, the fact that NMIC was providing services for THI (VFCC),
13  which violated California Law, the CIC and the Defendants' Exhibit 19 filings.

14         142.   At no time, did the CDI ever become aware that the services and
15  actions indicated in the Complaint, had begun, as between NMIC and THI (VFCC).

16         143.   In or around July 2010, in an effort to conceal their illegal and
17  fraudulent services act, that had begun in 2009, the Defendants made a request to
18  the CDI, that the CDI 'pre-approve' a servicing plan between NMIC and THI
19  (VFCC).  At no time, did the Defendants inform the CDI, that since 2009, NMIC
20  and THI (VFCC), had already been conducting the aforementioned illegal services
21  outlined in the Complaint herein.

22         144. Defendants, through fraudulent misrepresentation, omission and
23  concealment, purposefully mislead the CDI, that the services between NMIC and
24  THI (VFCC) outlined herein, was at the pre-approval stage, rather than the truth
25  that those services were currently being conducted by Officers, Managers and
26  employees of the Defendants.  The Defendants illegal services, were also a
27  violation of CIC §1250.1 as no pre-approval or approval from the CDI for those
28  services was ever granted the Defendants

145.    Due to the fact that the services requested by the Defendants and THI clearly violated the Separation Requirements outlined in §1861.16(c)(1), coupled with the fact that each Defendant had filed an Exhibit 19, claiming they are exempt from the Cross Company offer requirement due to alleged independence between Defendants, the CDI refused to approve the services request between NMIC and THI (VFCC).

146.    Despite the fact that the Defendants never had their illegal joint servicing methods, or shared business model pre-approved or approved by the CDI, the Defendants continued with their fraudulent, illegal services throughout the Class Period.

147.    The Defendants', officers, managers and employees referenced herein, acted in a fraudulent, actionable, manner.  The conduct was done with malice and intent, so as to conceal from the Plaintiffs and Members of the Class the clear violations of the California Law, CIC and California Insurance Regulations.

148.    With regard to Plaintiffs, Francisco Rocha and Ester Rocha, they were sold a policy by Defendant, AMCO, with a stated "Total Policy Premium" of $923.62, as outlined on Page 3 of **Exhibit A**.  At the same time, for the same policy period and for the same or substantially the same coverages, Defendant VFCC had policies available that should have been offered by the Defendant's agents and representatives, and sold by the Defendant VFCC for $817.75.  Defendants', and the Control Group, should have offered through their agents and representatives, and the Defendants and the Control Group should have sold a policy to Francisco and Ester Rocha from VFCC which is $105.87 less than what they were charged and paid for, in accordance with the Cross Company offer requirement.

149.    Until 2016, Plaintiffs, did not have knowledge of, or the means to determine, whether they were being offered the lowest Good Driver rate for their policies.  Due to Defendants' on-going concealment, and fraudulent conduct, the Plaintiffs could not have discovered until 2016, that they were being continually

1  overcharged their premiums, by not being offered or sold the lowest Good Driver
2  rate, throughout the Class Period.

3      150.    Defendants' wrongful conduct entitles Plaintiffs and the Class to
4  recover, in addition to their actual damages, punitive damages and attorneys' fees.

5                           **COUNT IV**
6  **VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND
   PROFESSIONS CODE**
7              **(Unlawful Business Practice)**

8      151.    Plaintiffs reallege the paragraphs above, as if fully set forth herein.

9      152.    California Business and Professions Code §17200 *et seq*. prohibits acts
10  of unfair competition, which includes unlawful business practices.

11      153.    Defendants engaged in unlawful business practices by violating Cal.
12  Ins. Code §§1861.02, 1861.025.

13      154.    Defendants engaged in unlawful business practices by violating Cal.
14  Ins. Code §1861.16.

15      155.    Through the Class Period, the Defendants continued to engage in
16  unlawful business practices by violating Cal. Ins. Code §§§1861.02, 1861.025 and
17  1861.16 and by failing to reimburse Plaintiffs and the members of the Class for
18  amounts in breach of the Cal. Ins. Code.

19      156.    As a direct and proximate cause of Defendants' unlawful methods of
20  competition and unlawful acts or practices, Plaintiffs and the Class have lost money
21  through unlawfully excessive automobile insurance premiums.

22      157.    As a direct and proximate result of these same unlawful acts or
23  practices, Defendants have been unjustly enriched and should be required to make
24  restitution to Plaintiffs and the Class pursuant to §§17203 and 17204 of the
25  California Business and Professions Code.

26                           **COUNT V**
27  **VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND
28          PROFESSIONS CODE**

36

**(Unfair Business Practice)**

158.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

159.   Defendants' acts and practices as alleged in this Complaint constitute unfair business practices that violate California Business and Professions Code §17200 *et seq.*

160.   The wrongful conduct alleged above and the unfair and unlawful charging of excessive insurance premiums and the making of false representations and/or concealments about the premiums charged violates public policy and creates harm to Plaintiffs and the Class that vastly outweighs any utility of Defendants' conduct (of which there is none.)  Consumers, unaware of Defendants' misrepresentations and misconduct, could not have reasonably avoided the harm.

161.   Through the Class Period, Defendants have failed to disclose the facts concerning their insurance premiums overcharges, facts that would be and are material to Plaintiffs and the Class.

162.   As a direct and proximate cause of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Class have lost money through the payment of excessive insurance premiums.

**COUNT VI**
**VIOLATION OF §17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE**
**(Fraudulent Business Practice)**

163.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

164.   Defendants' acts and practices as alleged in the Complaint constitute fraudulent business practices that violate the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*.  Defendants engaged in fraudulent business practices by failing to disclose material facts concerning their automobile insurance rates, including that their rates violated Cal. Ins. Code §1861.16, and by representing that

they provided to the statutory Good Drivers, the lowest rates within their Control Group.

165.    Defendants' fraudulent practices were designed to induce Plaintiffs and the Class to purchase and maintain automobile insurance at Defendants' illegal rate under circumstance where there was a likelihood of being deceived.

166.    As a direct and proximate cause of Defendants' fraudulent methods of competition and deceptive acts or practices, Plaintiffs and the Class have lost money by overpaying for automobile insurance at illegal rates.

**COUNT VII**
**DECLARATORY RELIEF**

167.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

168.    An actual bona fide controversy exists between Plaintiffs and the Proposed Class, on the one hand, and Defendants, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties.

**PRAYER**

169.    WHEREFORE, the Plaintiffs request that the court enter judgment in their favor and in the favor of the members of the Class and against Defendants jointly and severally as follows:

a.    Determining that the action if properly maintained as a Class Action; Certifying the Class; Certifying the Plaintiffs as Class representatives for the Class; and appointing the Plaintiffs' Counsel as Counsel for the Class;

b.    Awarding compensatory and punitive damages in excess of $5,000,000.00, plus Attorneys' fees and costs;

c.    Awarding pre-judgment interest;

d.    Awarding equitable, injunctive and declaratory relief;

e.    Pursuant to Business and Professions Code Section 17203;

CLASS ACTION COMPLAINT

1          (i)     permanently enjoining all Defendants, their employees, agents,

2                  representatives, successors, assigns, and all persons who have

3                  acted in concert with them from further committing the acts of

4                  unfair competition alleged above;

5          (ii)    requiring them to restore to the Plaintiffs and the Class the

6                  money acquired by Defendants' illegal acts and practices

7                  constituting unfair competition;

8          (iii)   requiring them to offer replacement of the Plaintiff and the Class

9                  members into Defendants' California licensed Control Group

10                 companies with the lowest Good Driver rate for the coverage as

11                 required by California Law;

12     f.   Providing such other and further relief as is just and appropriate.

13

14  Dated: April 13, 2018                    **KABATECK BROWN KELLNER LLP**

15

16                                  By:    */s/ Brian S. Kabateck*
                                           Brian S. Kabateck
17                                         Shant A. Karnikian
                                           *Counsel for Plaintiffs and the*
18                                         *Proposed Class*

19

20  Dated: April 13, 2018                    **KISLING NESTICO & REDICK, LLC**

21

22                                  By:    */s/ John J. Reagan*
                                           John J. Reagan
23                                         Alberto R. Nestico
24                                         *Counsel for Plaintiffs and the*
                                           *Proposed Class*
25

26

27

28

CLASS ACTION COMPLAINT

1

## **JURY DEMAND**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs and

3  the members of the Class hereby demand trial by jury on all eligible claims and

4  issues.

5

6  Dated: April 13, 2018                    **KABATECK BROWN KELLNER LLP**

7

8                                           By:    */s/ Brian S. Kabateck*
                                                   Brian S. Kabateck
9                                                  Shant A. Karnikian
                                                   *Counsel for Plaintiffs and the*
10                                                 *Proposed Class*

11

12
    Dated: April 13, 2018                    **KISLING NESTICO & REDICK, LLC**
13

14                                          By:    */s/ John J. Reagan*
                                                   John J. Reagan
15                                                 Alberto R. Nestico
                                                   *Counsel for Plaintiffs and the*
16                                                 *Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Prepared on April 5, 2016



**Allied**
Insurance
a Nationwide* company
On Your Side*

Allied Insurance
1100 Locust St., Dept. 1100
Des Moines, IA 50391-1100

# Your Policy Renewal

This is not a bill. Your bill is sent separately.
**Personal Auto Policy**
Policy Period: May 4, 2016 - Nov 4, 2016
Policy Number:   **PPA 0026619177-3**
Account Number: **7275043295**

*On Your Side* Rewards, like
New Car Replacement, are
available in your state;
please see back for more
details.

Ester Rocha
Francisco Rocha
Po Box 1491
Lake Elsinore CA 92531-1491

84 18300036 5026



✓ **Insurance Identification Cards** - Your ID cards
are enclosed in this packet.

✓ **Declarations** - These pages show **your
coverages** under this policy. Carefully review
these details and call SCHOOLSFIRST INS
SERVICES at 1.800.282.1446 if you have
questions or want to make changes.

- **General Information**
- **Coverage Details**
- **Your Total Policy Premium**

✓ **Policy Contract** - Keep this contract for future
reference.

**Your Policy Courtesy of:**    SCHOOLSFIRST INS SERVICES

**How to Contact Us**
Customer Service
Your Allied Agent

**1.800.282.1446**
**SCHOOLSFIRST INS SERVICES 714.258.4309**

2295184

Prepared on April 5, 2016

**Allied**
Insurance
a Nationwide · company
*On Your Side ·*

**On Your Side Rewards**

## Features Available for Purchase
### Deductible Savings Rewards:

Total Loss Deductible Waiver:    Eliminates your entire comprehensive and/or collision deductible in the event of a total
loss.

### Good-As-New:

Gap Coverage:    Covers the difference of what you owe on your car and its market value.

New Car Replacement/Gap:    After a total loss, we replace your car with a new car of the same make and model, also
includes Gap coverage.

### Roadside Assistance:

Basic:    Towing up to 15 miles, fuel delivery, lockout, jump starts, flat tires, and membership
discounts. These services apply while driving a vehicle insured by us or while an insured
driver or resident relative is an occupant of someone else's vehicle.

Plus:    Basic package plus towing up to 100 miles, trip interruption, turn-by-turn directions,
pre-trip map routing, and emergency message.

Thank You for being a valuable Allied customer. If you have questions about any of the *On Your Side* Rewards, please
contact your agent.

**Additional Contact Information**
Internet                          www.alliedinsurance.com
24-Hour Claims Reporting          1.800.282.1446

Prepared on April 5, 2016        Page 1 of 4

**Allied**
Insurance

# Your Policy Declarations

Personal Auto Policy
Policy Period: May 4, 2016 - Nov 4, 2016
Policy Number:   PPA 0026619177-3
Account Number: 7275043295

**Policyholder (Named Insured):**
Ester Rocha
Francisco Rocha
Po Box 1491
Lake Elsinore, CA 92531-1491

Keep these Declarations for your records.

8418300036S033

## General Policy Information

**Issued: April 5, 2016**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorist's financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

**Policy Period: May 4, 2016– November 4, 2016** but only if the required premium for this period has been paid and only for six month renewal periods if renewal premiums have been paid as required. This policy is initially effective at (1) the time the application for insurance is completed, or (2) 12:01 a.m. on the first day of the policy period, whichever is later. Each renewal period begins and ends at 12:01 a.m. Standard time at the address of the named insured stated herein. This policy term expires at 12:01 a.m. at the address of the named insured stated herein.

Your carrier is Amco Insurance Company, NAIC #19100.

## How You Saved on this Policy with Allied

- Multi-Policy
- Air Bag Discount
- Elite Driver Discount
- Persistency Discount
- Anti-Theft Device
- Multi-Car Discount
- Good Driver Discount

## Insured Drivers

| Name | Date of Birth | Marital Status | License Number |
|---|---|---|---|
| Ester Rocha | 04/23/72 | Married | B8807281 |
| Francisco Rocha | 01/20/68 | Married | C4745168 |

## Changes Made to Your Policy

- Change IN Annual Mileage - 00 Toyo
- Change IN Annual Mileage - 10 Niss
- Rating Adjustment For Change IN Vehicle Usage - 10 Niss

Effective date for all changes May 04, 2016

16243 (12-08)

Continued on the next page



**Allied**
Insurance

For coverage definitions and descriptions,
visit www.alliedinsurance.com



Prepared on April 5, 2016          Page 2 of 3

# Your Policy Declarations

**Personal Auto Policy**
Policy Period: May 4, 2016 - Nov 4, 2016
Policy Number:  PPA-0026619177-3
Account Number: 7275043295

## Insured Vehicles and Schedule of Coverages

### 2000 Toyo Echo
VIN JTDBT1232Y0062699          Garaging Address: 351 Avenue 11 Lake Elsinore, CA 92530-4443

| Coverages | Limits of Liability | | Premium |
|---|---|---|---|
| Bodily Injury Liability | $25,000 Per Person | | $106.81 |
| | $50,000 Per Occurrence | | |
| Property Damage Liability | $25,000 Per Occurrence | | $80.33 |
| Medical Payments | $1,000 Per Person | | $9.53 |
| Uninsured Motorist Bodily Injury | $25,000 Per Person | | $39.81 |
| | $50,000 Per Accident | | |
| Comprehensive | Actual Cash Value | Less A $500 Deductible | $17.06 |
| Collision | Actual Cash Value | Less A $500 Deductible | $79.91 |
| Waiver Of Collision Deductible | | | $3.10 |
| Rental Reimbursement | $30 Per Day/$900 Maximum | | $12.32 |
| | | **Total for this Vehicle** | **$348.87** |

### 2010 Niss Murano
VIN JN8AZ1MU9AW010901          Garaging Address: 351 Avenue 11 Lake Elsinore, CA 92530-4443

| Coverages | Limits of Liability | | Premium |
|---|---|---|---|
| Bodily Injury Liability | $25,000 Per Person | | $148.13 |
| | $50,000 Per Occurrence | | |
| Property Damage Liability | $25,000 Per Occurrence | | $104.42 |
| Medical Payments | $1,000 Per Person | | $8.61 |
| Uninsured Motorist Bodily Injury | $25,000 Per Person | | $63.95 |
| | $50,000 Per Accident | | |
| Comprehensive | Actual Cash Value | Less A $500 Deductible | $37.05 |
| Collision | Actual Cash Value | Less A $500 Deductible | $191.84 |
| Waiver Of Collision Deductible | | | $3.82 |
| Rental Reimbursement | $30 Per Day/$900 Maximum | | $15.17 |
| | | **Total for this Vehicle** | **$572.99** |

## Policy Level Schedule of Coverages

| | | | |
|---|---|---|---|
| Allied Extra Coverages | See Endorsement | | |
| | | **Total for Policy Coverages** | **$0.00** |

Continued on the next page

16243 (12-08)

**Allied**
Insurance

# Your Policy Declarations

**Personal Auto Policy**
Policy Period: May 4, 2016 - Nov 4, 2016
Policy Number:    PPA 0026619177-3
Account Number: 7275043295

## Premium Summary

| | |
|---|---:|
| 2000 Toyo Echo | $348.87 |
| 2010 Niss Murano | $572.99 |
| State Fraud Surcharge *No Refund | $1.76 |
| Total For Policy Coverages | -$0.00 |

| | |
|---|---:|
| **Total Policy Premium** | **$923.62** |

## Policy Form and Endorsements

| | |
|---|---|
| AA0001 (0986) | Personal Auto Policy |
| AA0001A (1111) | Signature Page |
| AA0007 (1192) | Changes Provision |
| AA0008A (1109) | Allied Extra Coverages |
| AA0073 (0697) | Waiver of Collision Deductible |
| AA0169 (1014) | Amendment of Policy Provisions - California |
| AA0487 (1109) | Uninsured Motorists Coverage - California |
| AA1429 (0711) | Rental Reimbursement / Transportation Expenses - Rental Days Plus |

84 18300036504 0

For Office Use Only:

11/04/09
Terr: 998
$0.00

Issued By: Amco Insurance Company, Des Moines, IA
Countersigned at: Des Moines, IA
By: Schoolsfirst Ins Services

### How to Contact Us

| | |
|---|---|
| Customer Service | 1.800.282.1446 |
| Your Allied Agent | SCHOOLSFIRST INS SERVICES-714.258.4309 |
| Internet | www.alliedinsurance.com |
| 24-Hour Claims Reporting | 1.800.282.1446 |

16243 (T2-08)



**Allied**
Insurance.

This page intentionally blank.